The bill of complaint was filed by the complainants to have them reinstated as members of the union from which they had been suspended and to compel the defendant to re-engage them as employees. The complainants were members of the defendant local. They were employed by the defendant laundry company as drivers and helpers. The conditions and terms of their employment are controlled by a closed shop agreement previously entered into between the laundry and the union.
On April 20th, 1942, the Federal Office of Defense Transportation issued "General Orders O.D.T. No. 6." The effect of the order required all operators of rubber-tired vehicles to reduce their monthly vehicular mileage by a minimum of twenty-five per cent. In compliance therewith the laundry company proposed to rearrange its truck schedule by operating *Page 328 
four trucks during the day and two at night instead of six during the day and one at night. The evidence showed that if the proposed plan were put into effect it would result in a curtailment of mileage sufficient to comply with the said order. As part of the plan the drivers and helpers were expected to rotate on the night shift, and on days when any of them had no truck to operate they were to help in the plant. All were to receive the same wages as theretofore.
The laundry officials conferred with the officials of the union who were of the opinion that the proposed change was proper and should be accepted by the men. The union officials agreed to summon its members employed by the laundry, discuss the plan with them and urge its acceptance. Such a conference was held at which the employees vociferously refused to consider any change in working hours and arrangements. Threats were made by some of them that they would go out on strike if the changes were made. Much argument took place at this conference. The men accused the union officials of "selling out" the men and siding with the employer against the interests of the employees. The men refused to submit the matter to arbitration.
Complainants were then notified by the union officials to appear before the executive board. They were charged with refusing to cooperate with the governmental regulation, of being in arrears in their dues and with using abusive and profane language to the union officials. The gravamen of the complaint against them appears to have been their reluctance to cooperate with the plan to meet the requirements of the O.D.T. order. The refusal to cooperate is contrary to the declared policy of the International Brotherhood. The Brotherhood has instructed all its subordinate locals to adhere to a policy of complete cooperation with the federal government in the war effort.
Two of the complainants appeared for the trial and denied culpability. The other three did not appear nor did they ask an adjournment. At the conclusion of the hearing before the board, all five complainants were suspended. When the laundry was notified of this result, it dismissed the complainants for the reason that they were no longer members *Page 329 
of the union and, therefore, could not be employed under the provisions of the closed shop contract. Thereupon the complainants filed this bill of complaint.
One of the allegations of the bill is that the laundry company, through its officials, agents and employees, conspired with the union, its officers and agents, to deprive the complainants of their membership in the union and their right to continue their employment. There was no evidence before me that a conspiracy existed between the laundry company and the union. I, therefore, dismissed the bill as against the laundry company for failure of proof.
It is fundamental that this court will refuse to interfere with the internal affairs of a voluntary association unless the aggrieved member has first exhausted his remedies with that association. In addition to this, the complainants are bound by article 18, section 13, of the constitution of the International, which provides that any member against whom disciplinary action has been taken must exhaust his remedies under its constitution before resorting for relief to any other court or tribunal. It is not necessary here to set forth the provisions of available remedies under the constitution of the union for the reason that complainants, after their suspension, failed to seek the same. This court, therefore, lacks jurisdiction to determine the controversy between the complaining members and the defendant union. They did not attempt to exhaust their remedies within their own organization. There is nothing in the proofs which shows that the complainants were relieved of that requirement or that the remedy was inadequate or would have been futile, illusory or vain. See Walsche v. Sherlock, 110 N.J. Eq. 223.
In view of the above facts, I also dismissed the bill as to the defendant union and its officers, c., the other defendants. *Page 330